Filed 9/30/22  P. v. Torres CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ELIZABETH FERNANDEZ TORRES,<br><br>Defendant and Appellant. | F082137<br><br>(Super. Ct. No. BF115300A)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Michael G. Bush, Judge.

Elizabeth M. Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, Jeffrey D. Firestone and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Elizabeth Fernandez Torres appeals the trial court's denial of a recommendation made by the Secretary of the Department of Corrections and Rehabilitation (the Secretary) under Penal Code[1] former section 1170, subdivision (d)(1) that the trial court consider recalling defendant's sentence and resentencing her in light of changes made to section 12022.53, subdivision (h), a statute the Secretary erroneously concluded was involved in defendant's case. Defendant contends that the trial court's denial of recall and resentencing without permitting her counsel to submit briefing violated her constitutional rights and was reversible error.

The People contend that the trial court properly denied the recommendation to recall because the Secretary's stated reason—changes to section 12022.53 applicable to firearm enhancements—is not applicable to defendant's sentence because defendant was sentenced for a deadly weapon enhancement pursuant to former section 12022, subdivision (b)(1) and not pursuant to a firearm enhancement.

While defendant's appeal was pending, Assembly Bill No. 1540 (2021–2022 Reg. Sess.) (Assembly Bill 1540) came into effect on January 1, 2022, and moved the recall and resentencing provisions of former section 1170, subdivision (d)(1) to former section 1170.03.[2] (Stats. 2021, ch. 719, §§ 1–7.) Assembly Bill 1540 also clarified the Legislature's intent regarding procedural requirements and added a presumption favoring recall and resentencing. (Stats. 2021, ch. 719, § 1(i); see former § 1170.03, subd. (b)(2).)

In supplemental briefing, defendant argues that Assembly Bill 1540 constitutes a clarification of existing law and therefore applies to cases involving the interpretation of former section 1170, subdivision (d). Defendant further argues Assembly Bill 1540

---

[1] All further references are to the Penal Code unless otherwise noted.

[2] Effective June 30, 2022, former section 1170.03 was renumbered section 1172.1 with no change in text. (Stats. 2022, ch. 58, § 9.)

applies retroactively to her case pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). The People argue Assembly Bill 1540 is not retroactive, and, in any case, remand is unnecessary because the relief recommended by the Secretary is not available to defendant whose sentence was not enhanced pursuant to section 12022.53, subdivision (h).

We agree with defendant that Assembly Bill 1540 applies to her case because it is a clarification of former section 1170, subdivision (d)(1), however, we also agree that the trial court's deviation from the current procedural requirements of section 1172.1 is harmless in light of the particular facts of this case. We affirm the trial court's denial of the Secretary's recommendation to recall and resentence.

## PROCEDURAL BACKGROUND

The District Attorney of Kern County filed an information on October 16, 2006, charging defendant with murder (§ 187, subd. (a)) and alleging that she personally used a deadly or dangerous weapon (a knife) in the commission of the offense (former § 12022, subd. (b)(1)). The information also alleged one prior "strike" conviction[3] within the meaning of the "Three Strikes" law (currently codified at §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and a prior serious felony conviction enhancement (§ 667, subd. (a)). A jury convicted defendant of second degree murder on January 16, 2007, and found true the allegation that she personally used a knife in committing the offense. After defendant waived her right to a jury trial regarding her prior convictions, the trial court found the allegations to be true. The trial court denied defendant's motion to strike her prior serious felony conviction and sentenced her to a term of 30 years to life in prison (§ 667,

---

[3] The information alleged defendant was convicted of assault with a deadly weapon or by means likely to produce great bodily injury on a peace officer (§ 245, subd. (c)).

3.

subd. (e)), plus one year (former § 12022, subd. (b)(1)), plus five years (§ 667, subd. (a)), for a total term of 36 years to life.[4]

The Secretary submitted a recommendation to the trial court in August 2020[5] to recall and resentence defendant "based upon a change in sentencing laws" pursuant to former section 1170, subdivision (d)(1). The Secretary's letter further explained:

> "[Defendant] was convicted of [section] 187[, subdivision ](A), Murder 2nd Degree, which was enhanced with [former section] 12022 [, subdivision ](b)(1), Committing Felony while Armed with Firearm[6] and a prior term enhancement of [section] 667[, subdivision ](a), Prior Felony Conviction of Serious or Violent Offense. In light of those convictions, please consider that amendment to PC Section 12022.53, subdivision (h), which became effective January 1, 2018. This section previously required a sentencing court to impose enhancements for personal use of a firearm in the commission of enumerated felonies. However, courts are now empowered with discretion to strike or dismiss a personal use firearm enhancement at sentencing or resentencing pursuant to [former] Section 1170, subdivision (d)(1), in the interest of justice pursuant to PC Section 1385. [Defendant] received a term of 36 years to life and has a current earliest possible release date of November 27, 2036.
>
> "Having reviewed the enclosed documentation, it appears that [defendant's] sentence warrants the attention of the court. Pursuant to [former] Section 1170, subdivision (d)(1), as the Secretary, I recommend [defendant's] sentence be recalled and that she be resentenced."

The letter included a copy of the information, abstract of judgment, minutes from the sentencing hearing, and a "Cumulative Case Summary and Evaluation Report" that included information pertaining to her self-help activities and institutional adjustment while incarcerated. (Boldface & some capitalization omitted.)

---

[4] The trial court also ordered defendant to pay victim restitution (former § 1202.4, subd. (f)), a $200 restitution fine (former § 1202.4, subd. (b)), a suspended $200 parole revocation restitution fine (§ 1202.45), and a $20 court operations assessment (§ 1465.8).

[5] The letter was dated August 19, 2020, but filed in the trial court on September 4, 2020.

[6] The Secretary incorrectly described defendant's enhancement, which was using a dangerous weapon (a knife) and not a firearm.

4.

The trial court held a hearing on September 15, 2020. Counsel for both the People and defendant appeared.[7] The court appointed counsel from the public defender's office for defendant and continued the hearing for defendant's counsel to review the Secretary's correspondence.

On September 25, 2020, the prosecutor filed an opposition to recall and resentencing because defendant's sentence was not enhanced pursuant to section 12022.53, subdivision (h). The prosecutor further argued that the trial court had previously denied defendant's *Romero*[8] motion to strike her prior conviction and, at the time of sentencing, also had discretion to strike the deadly weapon use enhancement (former § 12022, subd. (b)) but did not exercise it.

On October 6, 2020, the trial court conducted a hearing on the Secretary's recommendation. The trial court indicated that it intended to deny the request because defendant was sentenced based upon a "knife enhancement" and not a "gun enhancement." Defense counsel then requested an opportunity to research the issue. The trial court responded, "Well, they are asking me to do something that—to resentence her. [¶] … [¶] And vacate any finding on the gun enhancement, but there is no gun enhancement. This is discretionary with the Court, so I'm going to deny it. All right."

Defendant filed this timely appeal on December 4, 2020.

## FACTS[9]

Defendant and her boyfriend, Augustine, lived together in an apartment in Bakersfield that they shared with Garcia. On July 4, 2006, defendant hosted a party to

---

[7]     Defendant did not appear and the trial court minutes provide that defendant's counsel waived defendant's appearance. However, the transcript of the proceedings does not contain this waiver.

[8]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[9]     The following facts are drawn from our prior nonpublished opinion (*People v. Torres* (Mar. 12, 2008, F052316)) affirming defendant's judgment.

celebrate the holiday. Later in the evening, after defendant had been drinking, she fought with Augustine and became very upset. Augustine took defendant's daughter to defendant's aunt's house to protect her from the argument and returned to the aunt's house later to ask that the aunt call for an ambulance for Garcia.

When officers responded at approximately 1:30 a.m., Augustine directed them to his apartment where officers found Garcia on the kitchen floor. Garcia was not wearing a shirt and had a stab wound to his chest and a bite mark. Garcia had blood flowing from his mouth, was sweating profusely, and had difficulty breathing. The officers administered aid to Garcia until the ambulance arrived. Garcia died of the stab wound that pierced his heart.

Defendant had left the apartment and stayed overnight at a friend's house. Augustine cooperated with officers, contacted defendant, and arranged to meet her. The officers arrived with Augustine to defendant's location and arrested her. Defendant had bruises on both wrists and her upper right arm and blood on her shirt.

Defendant told detectives that she had argued with Augustine and it became physical when she pushed him. Garcia told defendant to calm down and grabbed her wrists but did nothing else to her. She told Garcia to stay out of the argument and that it was between her and Augustine. Augustine left to take defendant's daughter from the apartment so she would not witness the argument. As Augustine left, Garcia grabbed defendant's wrists and repeatedly told her to calm down. Defendant repeatedly told Garcia to let her go, but Garcia continued to hold her. Defendant bit Garcia on the shoulder, and he pushed her into the kitchen and told her to calm down. When Garcia released defendant's wrists, he told her, "[I]f you want to make problems, there's the knife[;] if you want to make matters worse, there's the knife." Defendant picked up the knife and stabbed Garcia in the chest. Defendant acknowledged that Garcia never hit her or touched her inappropriately and he was not holding or touching her when she stabbed him.

6.

When a detective asked defendant to clarify whether she was saying that she stabbed Garcia because he wanted her to, she explained that if she had really wanted to stab him, she would have stabbed him more than once. Specifically, she said, "If it was me who wanted to do it, I would have stabbed him a bunch of times at the same time. But when I stabbed him I saw he was not okay because I did what he wanted me to do." During an interview, defendant agreed that what she had done to Garcia was wrong, but she stated two or three times that she stabbed him because he told her to do so.

After defendant stabbed Garcia, she dropped the knife and walked outside. When Augustine returned, defendant told him she had stabbed Garcia. Augustine went into the apartment, but defendant stayed outside. Augustine came back out and told her he was going to leave to call an ambulance. After he left, she walked to a nearby store and called a friend who came and picked her up. At the friend's house, she went to sleep. Before she left, she changed her pants.

During the interview, defendant asked a detective whether Garcia had made a statement. Defendant's demeanor during the interview was detached and matter-of-fact and she showed no emotion. About halfway through the interview, defendant asked if Garcia was okay. At the end of the interview, the detective revealed that Garcia had died. In response, defendant asked what was going to happen to her and if she would go to jail for a long time.

## DISCUSSION

### A. Applicable Law and Standard of Review

#### 1. Amendments to section 1172.1

Former section 1170, subdivision (d)(1) authorized the court, in relevant part, to "at any time upon the recommendation of the secretary … in the case of state prison inmates, … [to] recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided

7.

the new sentence, if any, is no greater than the initial sentence." (Stats. 2020, ch. 29, § 14.) This provision thus created "an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455.) The trial court may recall a sentence on its own motion within 120 days for any reason rationally related to lawful sentencing. (*Id*. at p. 456.)

While this appeal was pending, the Legislature passed Assembly Bill 1540 that, among other things, moved the recall provisions of former section 1170, subdivision (d)(1) to former section 1170.03 and clarified the procedural requirements to be followed when requests to recall are made. (Stats. 2021, ch. 719, § 3.1.) The provisions became effective January 1, 2022. Effective June 30, 2022, the Legislature passed Assembly Bill No. 200 (2021–2022 Reg. Sess.) that, among other things, renumbered former section 1170.03 as section 1172.1 with no change in text. (Stats. 2022, ch. 58, § 9.)

Newly enacted section 1172.1, subdivision (a)(1) maintains the language of former section 1170, subdivision (d)(1) and provides that when a defendant, as here, has been committed to the custody of California's Department of Corrections and Rehabilitation (CDCR), the court may "at any time," upon the recommendation of the Secretary, recall the sentence and resentence the defendant. (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040 (*McMurray*); see *People v. Cepeda* (2021) 70 Cal.App.5th 456, 464.) Section 1172.1, subdivision (b) also provides that where, as here, a resentencing recommendation is made by the Secretary, the defendant is entitled to notice, the appointment of counsel, and a hearing within 30 days (§ 1172.1, subd. (b)(1)) and "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18" (*id*., subd. (b)(2)).

Moreover, under the new statutory language, in considering a recall and resentencing recommendation, the court "shall apply … any changes in law that reduce sentences or provide for judicial discretion" (§ 1172.1, subd. (a)(2)), may consider postconviction factors (*id*., subd. (a)(4)), and may "[r]educe a defendant's term of imprisonment by modifying the sentence" (*id*., subd. (a)(3)(A)). Finally, the "court shall state on the record the reasons for its decision to grant or deny recall and resentencing." (§ 1172.1, subd. (a)(6).)

### 2. Estrada

"Section 3 of the Penal Code instructs that no part of that code applies retroactively, which we have taken to mean that new criminal laws do not govern prosecutions initiated before the law went into effect. (See *Estrada*, *supra*, 63 Cal.2d at pp. 746–748.) But we have recognized an exception to this rule for new laws that mitigate punishment; in *Estrada*, we held that such laws are presumed to apply to cases charged before the law's enactment but not yet final. (*Id*. at p. 745.) Absent evidence to the contrary, we presume that when the Legislature 'amends a statute so as to lessen the punishment,' it 'must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' (*Ibid*.) Because the Legislature has 'determined that its former penalty was too severe,' the only reason to apply that penalty in pending cases would be 'a desire for vengeance,' a motivation we decline to attribute to our lawmakers. (*Ibid*.) This presumption applies to ameliorative laws enacted by ballot proposition as well." (*People v. Padilla* (2022) 13 Cal.5th 152, 160.)

Defendant argues that *Estrada* applies to amended section 1172.1, analogizing it to an amendment reducing punishment for a crime. The People respond that the *Estrada* presumption applies to "to all judgments that are not yet final on the statute's operative date," and defendant's conviction is final and has not been set aside. In *Padilla*, our Supreme Court held that a case is final when " 'the criminal proceeding as a whole' has

9.

ended [citation] and 'the courts can no longer provide a remedy to a defendant on direct review.' " (*People v. Padilla*, *supra*, 13 Cal.5th at p. 161.) However, where a judgment is vacated, the judgment becomes nonfinal and a defendant regains the right to appeal whatever new sentence was imposed. (*Ibid*.)

We note that here, the trial court did not set aside defendant's sentence and defendant's judgment is still final. But we do not need to decide whether section 1172.1 is retroactive pursuant to *Estrada* because, as we discuss below, the new provisions of section 1172.1 are applicable because they are intended as clarifying amendments. We ultimately decide, however, that the remand is not necessary as defendant would not receive a more favorable result even if the new provisions are applied in this case.

### 3. McMurray

In supplemental briefing, defendant also argues that the new provisions of section 1172.1 should apply because the Legislature intended the changes to clarify existing law, relying upon *McMurray*, *supra*, 76 Cal.App.5th 1035. We agree although, as we later discuss, we find any error to be harmless.

*McMurray* discussed the retroactivity of Assembly Bill 1540 under circumstances where the trial court had summarily declined resentencing under former section 1170, subdivision (d)(1) without explanation. (*McMurray*, *supra*, 76 Cal.App.5th at p. 1038.) *McMurray* explained: "If an amendment ' " 'which in effect construes and clarifies a prior statute' " ' was adopted soon after controversies arose about the proper interpretation of the statute, ' " 'it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.' " ' " (*Id*. at p. 1039.) "When a case involving such a clarifying amendment is on appeal, the appropriate resolution is to reverse and remand the matter for further proceedings in compliance with the amended legislation." (*Ibid*.)

*McMurray* concluded that Assembly Bill 1540 clarified the required procedures for former section 1170, subdivision (d)(1), "including that, when recalling and

10.

resentencing, the court 'shall … apply any changes in law that reduce sentences or provide for judicial discretion.' " (*McMurray*, *supra*, 76 Cal.App.5th at p. 1040, quoting former § 1170.03, subd. (a)(2).) It also clarified the Legislature's intent regarding former section 1170, subdivision (d)(1), "to 'ensure due process and equitable application in these types of resentencing cases.' " (*McMurray*, at p. 1040.) *McMurray* thus concluded that "[u]nder the circumstances, the appropriate remedy is to reverse and remand the matter, so that the trial court can consider the CDCR's recommendation to recall and resentence defendant under the new and clarified procedure and guidelines of section [1172.1]." (*Id.* at p. 1041, citing *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 253 [applying amendments to specific statutes made during pendency of appeal where Legislature made changes to explicitly abrogate prior court decisions].)

### B.    Analysis

The trial court did not have the benefit of the new statutory requirements when it held its hearing.[10] As relevant here, section 1172.1 provides that a defendant has a statutory right to be present at the recall hearing (§ 1172.1, subd. (a)(8)), clarifies and expands the factors the trial court may consider in its initial decision to recall a sentence (*id.*, subd. (a)(4)), and, as indicated above, if a resentencing request is from the Secretary, creates a presumption favoring recall and resentencing of the defendant, which may only be overcome if the trial court finds the defendant is an unreasonable risk of danger to public safety (*id.*, subd. (b)(2)).

The trial court denied the Secretary's recommendation to recall defendant's sentence at a hearing where defendant was not present and without applying the presumption favoring recall and resentencing to which the Secretary's recommendation is now entitled. Because the error is purely one of state law, the harmless error test in

---

[10]    We note, however, that the trial court did appoint counsel for defendant and continued the initial hearing for 30 days to permit defense counsel to review the recommendation.

*People v. Watson* (1956) 46 Cal.2d 818, 836 applies. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) The test is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836; see also Cal. Const., art. VI, § 13.)

The People oppose remand and argue that remand is an idle act because the Secretary's recall recommendation was premised on resentencing defendant without the enhancement for using a firearm and defendant's sentence had not been increased based on using a firearm. Defendant responds that the trial court erroneously denied the recommendation to recall on this basis because the trial court had jurisdiction to recall the sentence based on circumstances other than those that formed the basis of the Secretary's recommendation.

A trial court, upon receiving a section 1172.1, subdivision (a)(1) letter from the CDCR, has broad discretion whether to recall the existing sentence and resentence the incarcerated individual.[11] " '[T]he Secretary's recommendation letter is but an invitation to the court to exercise its equitable jurisdiction,' which 'furnishes the court with the jurisdiction it would not otherwise possess to recall and resentence.' " (*People v. Cepeda*, *supra*, 70 Cal.App.5th at p. 469, quoting *People v. Frazier* (2020) 55 Cal.App.5th 858, 866.) While the Secretary may have relied upon an erroneous basis for reducing defendant's sentence, section 1172.1 contains no language limiting the trial court to the basis cited by the Secretary in the recall recommendation. Section 1172.1, subdivision (a)(2) expressly provides that "[t]he court, in recalling and resentencing under this subdivision, shall apply the sentencing rules of the Judicial Council and *apply any changes in law that reduce sentences or provide for judicial discretion so as to*

---

[11] We note, however, that section 1172.1, subdivision (b)(2) now limits the trial court's discretion in denying the request to recall and resentence to a determination that defendant is a danger to public safety.

*eliminate disparity of sentences and promote uniformity of sentencing."* (§ 1172.1, subd. (a)(2), italics added.) Therefore, in making the decision to recall, the trial court has the discretion to recall defendant's sentence to revisit any of the earlier sentencing decisions.

We cannot conclude, based upon this record, that the trial court erred in denying the Secretary's recommendation because the trial court did not indicate that it was unaware of its discretion to consider circumstances other than the weapon enhancement in deciding not to recall defendant's sentence. On a silent record, the trial court is presumed to have been aware of and to have followed the applicable law when exercising its discretion, including its statutory sentencing discretion. (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) We cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of its discretion. (*Ibid.*) The trial court here stated, "This is discretionary with the Court, so I'm going to deny it."

However, when it denied the Secretary's request to recall the sentence, the trial court did not have the benefit of amended section 1172.1, subdivision (b)(2), which now provides for a presumption favoring recall and resentencing that can only be overcome if the court finds defendant is an unreasonable risk of danger to the public, as defined in subdivision (c) of section 1170.18. As explained in *McMurray*, through Assembly Bill 1540 the Legislature sought to "indicate that trial courts should accept the CDCR's resentencing recommendations." (*McMurray*, *supra*, 76 Cal.App.5th at p. 1040, citing Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1540 (2021–2022 Reg. Sess.) as amended Sept. 3, 2021, p. 3 [bill clarifies Legislature's intent to honor time, thought, and effort law enforcement agencies put into referrals].) In amending section 1172.1, the Legislature found and declared:

"(g) [The Secretary of the Department of Corrections and Rehabilitation, a district attorney, and the Board of Parole Hearings] devote significant time, analysis, and scrutiny to each referral that they make.

"(h) It is the intent of the Legislature for judges to recognize the scrutiny that has already been brought to these referrals by the referring entity, and to ensure that each referral be granted the court's consideration by setting an initial status conference, recalling the sentence, and providing the opportunity for resentencing for every felony conviction referred by one of these entities. (Stats. 2021, ch. 719, § 1, subds. (g), (h).)

Nonetheless, we cannot conclude that the trial court's decision would change even if it reconsidered the Secretary's recommendation in light of the presumption. The presumption favoring recall and resentencing recognizes the scrutiny the Secretary has given to the recommendation. However, in this case the Secretary erred in recommending that the trial court resentence defendant without the firearm enhancement because defendant's offense did not involve a firearm. The Secretary did not refer to any other of the trial court's sentencing decisions in making the recommendation. We cannot conclude that the Secretary's recommendation should be granted a presumption favoring recall and resentencing if based upon both factual and legal error.

Defendant argues that the Secretary's recommendation should be broadly construed as a recommendation for resentencing regardless of the Secretary's stated basis. However, the error has created an ambiguity as to Secretary's intent in making the recommendation. The length of defendant's sentence is affected by which sentencing factors the Secretary intended the trial court to revisit. While the trial court is not limited to the Secretary's recommendation during resentencing, the trial court is required to provide a presumption favoring recall and resentencing based upon the Secretary's recommendation. Where there is ambiguity in the recommendation due to error, the trial court should not speculate as to the Secretary's intent in the absence of such error. Since section 1172.1 does not require, in this particular case, that the trial court apply a presumption to grant the Secretary's recommendation to recall and resentence nor limit the reason for denying the recommendation only where the trial court determines that defendant is an unreasonable risk of danger to the public safety as defined in section 1170.18, subdivision (c), we see no basis to conclude that the trial court's decision to

14.

deny the recommendation to recall and resentence defendant would be different on remand.

In so concluding, we note specifically that section 1172.1 contains no limitation on the number of recommendations that the Secretary can make to the trial court to recall defendant's sentence and resentence her. Additionally, the trial court denied the instant recommendation to recall and resentence without prejudice to any further recommendations. Given the significance of the Secretary's recommendation and new entitlement to a presumption favoring recall and resentencing, and as the Secretary's recommendation reflects a significant error that casts doubt on the "analysis" and "scrutiny" devoted to the referral in this case (Stats. 2021, ch. 719, § 1, subd. (g)), the trial court was not required to apply the presumption and, therefore, remand would not result in a more favorable outcome to defendant.

## DISPOSITION

The trial court's October 6, 2020 order declining to recall defendant's sentence and resentence her is affirmed.

HILL, P. J.

WE CONCUR:


POOCHIGIAN, J.


PEÑA, J.

15.